## INTERNATIONAL SPOTLIGHT CORPORATION et al. v. UNITED MFG. CO.

### No. 9426.

District Court, N. D. Illinois, E. D.
June 8, 1931.

Williams, Bradbury, McCaleb & Hinkle, of Chicago, Ill., for plaintiffs.

Dyrenforth, Lee, Chritton & Wiles, of Chicago, Ill., for defendant.

LINDLEY, District Judge.

Plaintiff brought suit to recover for infringement of patents as follows: Cousino, No. 1,327,945, claims 5 and 6; Wielage, 1,434,468, claims 1 and 2; Sklarek, 1,675,915, claims 3 and 4; Sklarek, 1,699,124, claim 18; and Sklarek, 1,682,150, claims 5 and 7. Defendant denied validity of all of said patents and infringement of certain ones thereof. In its counterclaim it charged plaintiff with infringement of five patents, but at the trial relied upon only two patents to Ramsey and one to Aiken hereinafter discussed. The two claims of Cousino relied upon appear in the margin.[1]

The patentee described and claimed a spotlight mounting device designed, intended and adapted to be operated from the interior of, and inserted through the physical framework of, a closed automobile. He mounted a lamp head rotatably upon a housing which was included within and carried by a hollow shaft, likewise rotatable and of comparatively small dimensions, making it capable of easy penetration of or of insertion through a supporting element (corner post) of the frame of a closed car. Upon the inner end of said shaft he mounted a short manipulating handle, conveniently located near the driver, which, operating through a second housing on the shaft, effected a swinging movement of the lamp head and lamp carrying housing (bracket) with the hollow shaft about the horizontal axis of said shaft. Within the mechanism patentee placed a rack and pinions to transmit the rotation of the operating handle to the lamp about the axis of the handle, which when transmitted produced rotation of the lamp about an axis perpendicular to that of the hollow shaft. Thus he achieved rotation of the lamp both horizontally and perpendicularly by a compact device conveniently located, inserted through the front corner post of a closed car nearest the driver's seat, easily operated and producing efficient results. Obviously the rack and pinions used to transmit rotation from handle to lamp were one of several mechanical equivalents, including beveled gears and wheel sprockets and chains.

Searchlights, including double rotation, were old, and many delvers had vainly attempted successfully to adapt the art to the specific needs faced by Cousino when the latter entered the field. As admitted by counsel, his result, if patentable, must be limited to the specific combination of elements or mechanical equivalents thereof described and claimed by him. It is noteworthy that his device met with immediate favor, followed by substantial commercial success. Defendant and its officers at one time sought a license under the patent and have adopted all the substantial elements of the device. The

[1] 5. A windshield, a spotlight mounting device including a guide sleeve, a friction clamp anchored adjacent said windshield and embracing said sleeve, a spotlight carrying bracket at one side of said clamp, and a handle extending rearwardly from the sleeve at the other side of the clamp, said handle being movable to rotate said sleeve as to the clamp to rock the spotlight bracket, and said handle being rotatable to oscillate the spotlight bracket on an axis intersecting the axis of the sleeve.

6. A windshield frame, a spotlight mounting device mounted on said frame and including a guide projecting laterally therefrom, a spotlight carrying bracket on the outer end of said guide, and a handle transversely extending rearwardly on the inner end of said guide, said handle connected through the guide to rock the spotlight bracket on said guide as a horizontal axis, and said handle rotatable to oscillate the spotlight bracket on an axis intersecting the axis of the guide.

former patented combinations, some forty in number, have disappeared from the field, and competition therewith has been swept away. The lamp permits the driver to look over the beam of light, a desirable advantage in night driving. It achieves great length of light, possesses facility, accuracy of direction, and the desirable quality of naturalness of the movements of the handle in directing the light. The rays, without falling within the car, have a length or width of 280 degrees; the compactness of the lamp meets the restrictions of the car and the demands of the driver.

Bearing these facts in mind, and following the presumption of validity, in view of the results achieved invention must be ascribed to the device, unless there is proof of anticipation.

Lourdin (French patent No. 426,722), was delving in the same art as Cousino, but he provided a cumbersome and impracticable supporting frame for application to the cowl. He made use of a plurality of beveled gears and counter shafts. The device did not possess compactness, was not adapted to be located near the driver and was apparently awkward and impractical. He was not dealing with the specific problem of Cousino, that is, placing a compact lamp in a confined space, easily operated by the driver. He lacked Cousino's essential elements, the guide sleeve or guide, the rotatable shaft, the spotlight carrying bracket attached to a part of the hollow rotating shaft. He provided no rotatable handle, such as Cousino describes, to oscillate the spotlight on the axis intersecting the axis of the sleeve. He did not anticipate the device described and claimed by Cousino.

Rice, No. 1,241,150 provided a mounting, the handle of which was intended to be near the steering wheel of the automobile and within the curtained inclosure of an open car or inside an armored vehicle, but he makes no provision for attachment through the windshield post. His device lacks the clamping attachment of claim 5. He achieves a rocking rather than a rotating movement of his pitman rod, and the requirements of his description necessitated the use of a tube of substantial diameter. Apparently his model was never put upon the market, and, though he made a possible lighting device, it did not possess the advantages of Cousino.

Hills, No. 484,964, includes no hollow shaft or guide sleeve; no handle rockable with a hollow shaft to oscillate the spotlight on a perpendicular axis. His device could not be mounted through a windshield post, and was wholly unadapted for or incapable of use as Cousino's light. He used two handles, necessitating the use of both hands or of one hand twice.

Rees, No. 1,392,850, Love, No. 103,905, Ward, No. 449,719, MacHaffie et al., No. 576,683, and Everett, No. 930,059, all dealt with the same subject-matter as Cousino. Rees' application followed the issuance of Cousino's patent. It appears obvious that Love is of no pertinence. Ward disclosed a hollow shaft operating a dirigible spotlight, but he made use of two handles to effect the two different characters of movement. His mechanism is clearly distinguishable from that of Cousino. MacHaffie and Faure did not disclose a mechanism which was adapted for automobile equipment. Their device lacked the distinctive rocking handle of Cousino. Apparently the Cincinnati light, using the same type of handle movement as MacHaffie and Faure, has been forced from the market by the later lamp of the Cousino type.

Everett, No. 930,059, made use of a push and pull movement to rock the light about its trunnions and a turning movement to rotate both the lamp and bracket about a perpendicular base, but he did not make use of the specific combination of Cousino. Nor did Ramsey in either of his patents achieve the result of Cousino. His light was placed outside of the body, operated from outside of the body, and was clumsy and awkward in its operation. It could not without considerable modification be mounted within a closed car.

The court is of the opinion that, when Cousino, dealing as he was in a crowded art, conceived the idea of a compact searchlight upon the corner post of a closed car, with a handle inside of the door, near the driver's seat, permitting all desired motion of the lamp to be transmitted by one handle, located near the driver, along the axis of the shaft, he achieved a result which possessed utility and novelty. He made it possible to use a shaft of comparatively small diameter; the chosen movements of the motivating handle being peculiarly adapted to the operation in an automobile structure and the anatomy of the driver. Meeting with immediate favor and commercial success, preceded by many combinations, none of which appears to have been successful, embracing a specific combination not included in any of the preceding results, it follows that the patent is valid.

Wiclage followed Cousino, and purported to add an improvement to the device of the latter. For the rack and pinions of Cousino he substituted a rotary shaft carrying double gears meshing with pinions on the handle and lamp. This change, it would seem, needs no discussion to justify the conclusion that it amounted merely to a substitution of mechanical equivalents. In addition, Wielage ran the wires from the lamp through his inner shaft, making the latter tubular. Ramsey had done this previously, but, in the opinion of the court, the inclosing of the wires did not amount to invention in either Wielage or Ramsey. In Cousino, we had one steel shaft inclosed within the hollow shaft. The wires were carried down the exterior of the shaft. Any mechanic building a lamp, exercising the ordinary skill of a mechanic, would quite naturally and easily conclude that all he needed to do in order to cover the exposed wires would be to put them through a conduit included within the device. What would be a more natural conduit than the inner shaft, easily converted from a solid to a hollow shaft? The court believes that Wielage achieved no invention, and that the claims relied upon are void.

Sklarek adopted the elements of Cousino and the inclosed wires of Wielage, substituted for Cousino's rack and pinions Ward's beveled gears, and placed his switch at the end of his handle carrying bracket. He changed the switch from the push-button form of the prior devices to the toggle or lever switch. As suggested by counsel, pull switches are used overhead and under lamp shades, push-button switches are used where space is at a premium, and lever switches are used where ease of operation in the dark is important, but the court is not willing to concede invention to Sklarek because of his mere choice of switches. He achieves no new function, and none whatever as to the respective advantages of the push-button switch or a toggle switch. The claims are void for want of invention.

In his assembly patent Sklarek relies upon claim 18, as follows: "In a dirigible spotlight of the character described, the combination with a supporting member; of a lamp disposed at one side of said member; means for rotating said lamp about axes substantially at right angles to each other, said means including concentric shafts, extending through said supporting member, the inner of said shafts being provided with an end portion polygonal in cross section; and means for independently rotating said shafts, said means being in the form of an assembled unit comprising a handle support telescopically engageable with the outer of said concentric shafts and being provided with an angularly extended handle by means of which said handle support may be rotated to rotate said outer shaft, said handle being provided with a rotatable element cooperating with a second rotatable member carried by said handle support, said second rotatable member having a polygonal opening adapted for detachable reception of the polygonal end portion of said inner shaft." Without prolonged discussion, the court agrees with defendant's contentions that the claim is void for variance between claim and specification, for lack of invention, if construed to cover the structure of its own specification, and for late insertion after defendant entered the field. If we attribute validity to the claim, it must be limited to the narrow confines of the specific device described. Defendant's lamp does not come within those limitations. It includes no handle provided with a separate rotary element, and follows the teachings of Cousino in its provision for one rotary handle, the end of which is formed into a gear. Consequently there is no infringement.

Sklarek patent, 1,682,150, of August 28, 1928, describes a tool intended to help in attaching spotlights to the corner posts. The court is of the opinion the device shows the simplest mechanical adaptation of the common principles of jigs to a special situation, and that there is no invention involved in the claim sued upon.

What has been said concerning the prior devices pleaded against the plaintiff's patents applies with equal force to the patents of the defendant relied upon in its counterclaim. Ramsey, No. 1,093,009, may be held valid upon the ground that it was an advance in the art. It was characterized by a pump handle operating device, and was obviously devised for use only in an open car. As we have said, he did not achieve the same result as Cousino. Ramsey inclosed his wires, but, as has previously been said, this was an exercise only of mechanical skill. If he achieved invention, it was of something other than that which Cousino achieved, and what plaintiff now does and what defendant now does was in no way taught to them by either of Ramsey's patents.

In Ramsey, No. 1,147,973, is another pump handle operated lamp, and the device makes use of the push and pull rod. Nei-

238

ther the plaintiff nor the defendant follow his teachings, if we ascribe validity to his device.

 Aiken, No. 1,144,956, followed Ramsey, and apparently achieved nothing over Ramsey. The court is of the opinion that Aiken did not teach either plaintiff or defendant how to make their respective lamps; that he was anticipated by Ramsey; that he achieved no invention; and that, if his patent should be held valid, there is no infringement of the same.

There remains only the question of infringement of the Cousino patent by defendant. It appears from an examination of the device manufactured by the defendant that it embraces every element of Cousino, substituting only certain mechanical equivalents for certain ones in the latter's invention; that the specific combination to which Cousino must be restricted is infringed by defendant.

There will be a decree finding claims 5 and 6 of the Cousino patent valid, infringement thereof by the defendant, and for an accounting. The decree will direct that the plaintiff's suit be dismissed as to all of its other patents relied upon, for want of equity, and that the defendant's counterclaim be dismissed for want of equity. The costs will be taxed two-thirds against defendant and one-third against the plaintiff. Proper decree may be submitted.

The foregoing memorandum is adopted by the court as its findings of fact and conclusions of law herein.